GOSHORN, Chief Judge.
Sheriff Charles Dean, a co-defendant in a negligence action brought by Maurice Rouillier, appeals from the directed verdict in favor of Florida Power Corporation, another co-defendant. Dean argues that the trial court erred in holding as a matter of law that the auxiliary deputy sheriff who allegedly negligently directed traffic was not a servant or employee of Florida Power. We affirm.
On December 7, 1984, Rouillier was injured when the motorcycle he was operating on State Road 55 collided with a car at the intersection of State Road 55 and Power Line Road in Citrus County. Power Line Road is a private road owned by Florida Power Corporation and used by its employees to get to and from one of its facilities. Several years prior to the accident, Florida Power requested that the Sheriffs Department provide personnel to direct traffic at the intersection due to the volume of traffic there. Auxiliary Deputy Sheriff Clarence Harris was directing traffic at the intersection on the day of the accident. Rouillier filed suit against Florida Power and Sheriff Dean alleging the auxiliary deputy was an agent, servant, or employee of the Sheriff of Citrus County or of Florida Power Corporation.
At trial, Captain Hill of the Sheriff’s Department testified that Mr. Pelham of Florida Power contacted him and asked for a deputy to direct traffic. Captain Hill relayed the request to the captain of the auxiliaries who assigned Harris to work the intersection. Captain Hill also testified that private entities lack authority to direct traffic on public roads, but auxiliary deputies have that power.
Auxiliary Deputy Harris testified that his captain took him to the intersection the first day and trained him how to direct the traffic there. Thereafter, Harris devised his own system of setting up the cones and parking the department car there. Florida Power did not tell him how or where to set up the cones. Harris wore his sheriffs department uniform and orange vest. When Harris quit the department, the Sheriff’s Department chose his replacement to work the intersection. In addition to working this intersection, Harris also directed traffic for several churches and was paid directly by the churches. Harris received his law enforcement training at the police academy. He was required to take the same number of hours of instruction as the deputy sheriffs were required to take. The training was paid for by the Sheriff's Department.
Harris did not report in to Florida Power daily. Florida Power told him what hours to work. He kept track of his hours and weekly gave Florida Power his total and then Florida Power mailed a check to him. Florida Power did not take out withholding taxes. He was told by Mr. Pelham of Florida Power that if he had any problems with any Florida Power employees he was to report them to Mr. Pelham.
At the close of the case, the trial court granted Florida Power’s motion for directed verdict, ruling that the police power given the Sheriff is nondelegable and thus as a matter of law the auxiliary deputy was not an employee or agent of Florida Power.
We begin our analysis by observing that the Sheriff’s Office of each county has the vested authority to enforce all the traffic laws of the state on all state streets and highways. Section 316.640(2)(a), Fla. Stat. (1983). Traffic control is strictly within the police power of the governmental entity. Department of Transp. v. Neilson, 419 So.2d 1071, 1077 (Fla.1982); Duval Lumber Co. v. Slade, 147 Fla. 137, 2 So.2d 371, 372 (1941) (“The regulation of traffic on public streets or highways is in the exercise of the sovereign police power.”). The power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community “can neither be abdicated nor bargained away, and is inalienable even by express grant.” Atlantic Coast Line R.R. *963 v. City of Goldsboro, 232 U.S. 548, 558, 34 S.Ct. 364, 368, 58 L.Ed. 721 (1914). See also 10 Fla.Jur.2d Constitutional Law § 189 (1991).
Auxiliary Deputy Sheriff Harris was engaged in the exercise of a nondelegable police power in his activity of directing traffic on the public highway. Harris could not perform this duty in any capacity other than as a sheriff, a sheriffs deputy, or an auxiliary.[1] Accordingly, Florida Power cannot be liable for the manner in which police power is exercised by the person authorized to exercise it.
The courts generally recognize '... that the private employer will be relieved from liability for the acts of a commissioned police officer in his official capacity, although he has paid such officers for services in and about the employer’s property; and that the fact that the special police officer was commissioned as such by the state protects his private employer from liability for his acts, so far as in any particular case his acts may fairly be regarded as having been performed in his official capacity, rather than simply in behalf of his private employer.
53 Am.Jur.2d Master and Servant § 416 (1992) (footnotes omitted). See generally Annotation, Liability of private employer of police officer for latter’s negligence or other misconduct, 55 A.L.R. 1197 (1928).
It is the exercise of police power that distinguishes this case from Cirou v. Basier, 432 So.2d 628 (Fla. 3d DCA 1983) and McWain v. Greyhound Lines, Inc., 357 So.2d 780 (Fla. 3d DCA 1978), relied on by appellant. It appears, although not explicitly stated in Cirou, that the officers in those cases were both off-duty police officers hired by private businesses to act as security guards. The right of a security guard to detain and question suspects does not involve a nondelegable police power function. The capacity in which off-duty police officers detain and question suspects while employed as private security guards is a jury question. Harris was not an “off-duty” police officer. He was acting in his capacity as an auxiliary deputy sheriff performing a nondelegable police power function. The trial court correctly determined as a matter of law Florida Power was not liable for Harris’s negligence, if any, in performing his traffic control duties.
AFFIRMED.
COBB and COWART, JJ., concur.

. Section 943.10(7), Florida Statutes (Supp. 1984) defines an "[a]uxiliary law enforcement officer” as
any person employed or appointed, with or without compensation, who aids or assists a full-time or part-time law enforcement officer and who, while under the direct supervision of a full-time or part-time law enforcement officer, has the authority to arrest and perform law enforcement functions.